Slip Op. **15-95**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DUPONT TEIJIN FILMS, *et al.*, | |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | Before: Mark A. Barnett, Judge |
| Defendant, | Court No. 15-00048 |
| and | |
| TERPHANE, INC., and TERPHANE, LTDA., | |
| Defendant-Intervenors. | |

OPINION

Barnett, Judge:  Plaintiffs, DuPont Teijin Films, Mitsubishi Polyester Film, Inc. ("Mitsubishi"), and SKC, Inc. ("SKC"), move the court to stay this case pending the outcome of the appeal of the Department of Commerce's ("Commerce") scope determination (the "Scope Ruling") in *Mitsubishi Polyester Film, Inc. v. United States*, No. 13-00062 (filed Feb. 6, 2013).  (Pls.' Mot. to Stay ("Mot."), ECF No. 22.)  Defendant, the United States, through the United States International Trade Commission ("ITC" or "Commission"), takes no position on the motion.  (Def.'s Resp. to Mot., ECF No. 24.) Defendant-Intervenors, Terphane, Inc., and Terphane, Ltda., (together, "Terphane") oppose staying the case.  (Def.-Intervenors' Resp. in Opp'n to Mot. ("Opp'n"), ECF No. 25.)  For the reasons discussed below, the court grants Plaintiffs' motion.

## BACKGROUND AND PROCEDURAL HISTORY

### A.  Commerce's Scope Ruling and the *Mitsubishi* Litigation

On November 10, 2008, Commerce issued an antidumping duty order on polyethylene terephthalate (PET) film from Brazil, China, and the UAE.  *Polyethylene Terephthalate Film, Sheet, and Strip from Brazil, the People's Republic of China, and the United Arab Emirates*, 73 Fed. Reg. 66,595 (Dep't of Commerce Nov. 10, 2008) (antidumping duty order).  On February 22, 2012, Defendant-Intevernors requested a scope ruling from Commerce concerning certain copolymer surface films.  On January 7, 2013, Commerce issued the Scope Ruling and found that certain PET film coextruded products manufactured by Defendant-Intervenor Terphane, Ltda., a Brazilian firm, are outside of the scope of the antidumping duty order.  *Antidumping Duty Order on PET Film, Sheet, and Strip from Brazil*, A-351-841 (Dep't of Commerce Jan. 7, 2013) (final scope ruling).  On February 6, 2013, Plaintiffs Mitsubishi and SKC, U.S. producers of PET film, appealed the determination to this court, initiating the *Mitsubishi* litigation.

### B.  The Sunset Review

On October 1, 2013, the ITC issued a Notice of Institution for the first five-year review of PET film from Brazil, China, and the UAE ("the Sunset Review"). *Polyethylene Terephthalate Film, Sheet, and Strip from Brazil, China, and the United Arab Emirates*, 78 Fed. Reg. 60,311 (ITC Oct. 1, 2013) (initiation of five-year reviews). In Terphane's responses to the notice, they argued that "Terphane's business strategy emphasizes out-of-scope value-added products and growth in the domestic Brazilian

market," and noted that "Commerce's recent scope ruling confirms that several of Terphane's product lines are not subject merchandise."  (Mot. Ex. 2.)  Soon thereafter, Plaintiffs submitted comments to the ITC, stating that they "are concerned that Terphane's responses to the Commission are predicated on controversial and incorrect legal views regarding the definition of 'subject merchandise,'" and attached a copy of the *Mitsubishi* complaint.  (Mot. Ex. 4.)  On January 23, 2014, the ITC determined to conduct a full sunset review of the antidumping duty order.  *Polyethylene Terephthalate Film, Sheet, and Strip from Brazil, China, and the United Arab Emirates*, Inv. Nos. 731-TA-1131-1132-1134 (ITC Jan. 23, 2014) (explanation of commission determination on adequacy).

        In comments subsequently submitted to the ITC, Plaintiffs recommended that the Commission "[i]nstruct Terphane to provide two sets of questionnaire responses, one of which assumes that its Copolymer Surface Films . . . are within the scope of the order," and noted that Plaintiffs currently were challenging the Scope Ruling in *Mitsubishi*. (Mot. Ex. 8.)  Nevertheless, the ITC approved questionnaires stating that the Terphane products in question were outside of the scope of the order.  (*See* Mot. Ex. 9.)  On January 14, 2015, the ITC issued a final determination, in which it reached affirmative likely injury determinations with respect to China and the UAE, and a negative likely injury determination for Brazil.  *Polyethylene Terephthalate Film, Sheet, and Strip from Brazil, China, and the United Arab Emirates*, USITC Pub. 4512, Inv. Nos. 731-TA-1131-1132-1134 (Jan. 2014).

In its analysis, the ITC cumulated imports from China and the UAE, but not from

Brazil.  *See id.*  To support its decision not to cumulate Brazilian imports, the ITC stated:

> Given the additional capacity coming online in Brazil in the reasonably
> foreseeable future, the Brazilian industry's behavior prior to the imposition
> of the orders and *its continued interest in the U.S. market for out-of-scope
> merchandise*, and in light of the relatively low standard for a discernible
> adverse impact, we do not find that subject imports from Brazil would likely
> have no discernible adverse impact on the domestic industry if the order
> were revoked.

*Id.* at 13-14 (footnote omitted) (emphasis added).  The Commission further found that

Brazilian imports would face different conditions of competition than Chinese and

Emirati imports for the following reasons:

> There is only one Brazilian producer of subject PET film, Terphane Ltda.,
> which has a corporate relationship with its U.S. affiliate, Terphane, Inc.;
> Terphane, Inc. has control over all PET film sales in the U.S. market by
> Telphane Ltda., and ensures that no sales of any Terphane products are
> made to U.S. customers without its approval.  As such, the general manager
> of Terphane, Inc. has effective veto power over imports to the U.S. market
> by Terphane Ltda., and is responsible for ensuring that any U.S. imports
> from Brazil are consistent with Terphane's overall coordinated corporate
> strategy.  Terphane's strategy is detailed in its 2015 business planning
> documents . . . . This strategy calls for (1) a focus on the Brazilian home
> market and regional export market in Latin America; (2) the maximization of
> production and sale of value-added and specialty films; (3) investment in
> research so as to develop new value-added products; (4) seeking relief from
> dumped imports under the Brazilian antidumping laws; and (5) *being a
> "niche player" in the North American market by exporting out-of-scope
> higher value specialty films*.

*Id.* at 19-20 (footnotes omitted) (emphasis added).  In its material injury analysis, the

ITC again relied on Terphane's corporate strategy, i.e., that imports from Brazil would

focus on out-of-scope merchandise, to find that subject imports from Brazil likely would

not have significant negative volume and price effects.  *Id.* at 40-41, 43.  Together,

these findings led the ITC to conclude that "revocation of the antidumping duty order on subject imports from Brazil would not likely lead to a significant adverse impact on the domestic industry" and that "if the antidumping duty order were revoked, subject imports from Brazil would not be likely to lead to continuation or recurrence of material industry to an industry in the United States within a reasonably foreseeable time."  *Id.* at 43. Commerce revoked the antidumping duty order for PET film from Brazil on February 6, 2015.  *Polyethylene Terephthalate Film, Sheet, and Strip from Brazil, the People's Republic of China, and the United Arab Emirates*, 88 Fed. Reg. 6689 (Dep't of Commerce Feb. 6, 2015) (continuation and revocation of antidumping duty orders).

Plaintiffs filed this suit, contesting the ITC's determination, on February 20, 2015, (*see* ECF No. 1 (Summons)), and filed their Complaint on March 23, 2015, (Compl., ECF No. 5).  Of relevance, Count 1 of the Complaint challenges the ITC's cumulation determination because it relied on the Scope Ruling for support, (Compl. ¶¶ 15-16), and Count 3 alleges that the ITC's volume, price effects, impact, and material injury findings were predicated on the erroneous cumulation determination, (Compl. ¶¶ 21-22). Plaintiffs now move to stay the action, pending the outcome of the *Mitsubishi* litigation. (Mot.)

## Legal Standard

A court's power to stay its proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Neenah Foundry Co. v. United States*, 24 CIT 202, 203 (2000) (citation omitted) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248,

254 (1936)); *accord RHI Refractories Liaoning Co. v. United States*, 35 CIT __, __, 774

F. Supp. 2d 1280, 1284 (2011).  Whether to stay a case lies "'within the sound

discretion of the trial court.'"  *RHI Refractories Liaoning Co.*, 35 CIT at __, 774 F. Supp.

2d at 1284 (quoting *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416

(Fed. Cir. 1997)).  When exercising its discretion, the court "'must weigh competing

interests and maintain an even balance,' taking into account those of the plaintiff, the

defendant, non-parties or the public, and even itself."  *Neenah Foundry Co.*, 24 CIT at

203 (footnote and citations omitted); *accord RHI Refractories Liaoning Co.*, 35 CIT at

__, 774 F. Supp. 2d at 1284.

        "A court may properly determine that it is efficient for its own docket and the

fairest course for the parties to enter a stay of an action before it, pending resolution of

independent proceedings which bear upon the case."  *Deacero S.A.P.I. de C.V. v.*

*United States*, Slip Op. 15-87, 2015 WL 4909618, at *4 (CIT Aug. 17, 2015) (citation

and quotation marks omitted).  Without "a showing that there is at least a fair possibility

that the stay . . . will work damage to some one [sic] else, there is no requirement" that

the movant "make a strong showing of necessity or establish a clear case of hardship or

inequity to warrant the granting of the requested stay."  *An Giang Agric. & Food Imp.*

*Exp. Co. v. United States*, 28 CIT 1671, 1677, 350 F. Supp. 2d 1162, 1167 (2004)

(ellipses in original) (citations and quotation marks omitted).  However, the movant

"[n]ormally . . . must clearly identify the 'hardship or inequity' in moving forward with the

case 'if there is even a fair possibility that the stay . . . will work damage to some one

[sic] else.'"  *RHI Refractories Liaoning Co.*, 35 CIT at __, 774 F. Supp. 2d at 1284

(footnote omitted) (second ellipses in original) (quoting *Landis*, 299 U.S. at 255).

**Discussion**

### A. Plaintiffs' Arguments

Plaintiffs argue that staying this case until the resolution of *Mitsubishi* will avoid

the possibility of conflicting judgments.  They urge that this case and *Mitsubishi* "involve

a common legal question:  whether Telephane's Products are properly within the scope

of the antidumping duty order on PET film from Brazil."  (Mot. 10.)  In *Mitsubishi*,

Mitsubishi and SKC are challenging the validity of Commerce's Scope Ruling, while in

this case, the ITC's reasoning relied on the Scope Ruling to support its decision not to

cumulate Brazilian imports with those from China and the UAE, leading to the negative

sunset review determination.  Because Commerce is the agency charged with defining

the scope of antidumping duty orders, and because the ITC must defer to Commerce's

scope rulings when making its own determinations, the court should not proceed with

the present case until the conclusion of *Mitsubishi*.  (*See* Mot. 10, 12-13.)

Plaintiffs also assert that granting a stay will preserve judicial resources.

Because *Mitsubishi* and this case will require the court to determine whether Terphane's

products fall within the scope of the antidumping duty order, staying this case until

*Mitsubishi*'s conclusion will allow the court to avoid expending resources to resolve the

same issue twice.  (Mot. 11, 15.)  Plaintiffs further contend that a stay would not harm

any of the parties.  They note that Commerce already has revoked the antidumping duty

order on PET film from Brazil, and that the court has not enjoined U.S. Customs and

Border Protection ("Customs") from liquidating Terphane's PET film entries from Brazil. Therefore, neither Terphane nor the government will be injured by a stay.  (Mot. 15-17.)

### B.  Defendant-Intervenors' Arguments

Terphane avers that the court should not grant Plaintiffs' motion because there is no risk of conflicting judgments between this case and *Mitsubishi*.  They assert that Plaintiffs did not raise their scope argument before the ITC at the administrative level and, therefore, did not exhaust their administrative remedies.  Because of this failure to exhaust, Plaintiffs are precluded from making a scope argument before the court in this matter, and, thus, there is no danger of conflicting judgments.  (Opp'n 1-14.)  Terphane also invokes Plaintiffs' alleged inability to raise the scope claim to argue that granting a stay will not promote judicial economy or conserve party resources.  (Opp'n 14.)  Furthermore, they contend that the complexity of trade cases renders them "not conducive to quick judicial review" and counsels against granting a stay.  (Opp'n 14 (citation and quotation marks omitted).)  Finally, Terphane maintains that a stay will harm them because "any delay to litigation imposes some harm," and "Plaintiffs' motion evinces an intent to cast a shadow and uncertainty over Terphane's commercial activities for as long as possible."  (Opp'n 15-16 (citation and quotation marks omitted).)

### C.  Analysis

The court finds that the various interests of the parties and the court itself support staying this case pending the outcome of the *Mitsubishi* litigation.  In *Mitsubishi*, Mitsubishi and SKC, plaintiffs in this case, have appealed the Scope Ruling, which found that certain of Terphane's imports from Brazil are outside the scope of the

antidumping duty order.  In this action, Plaintiffs' first claim challenges the ITC's

decision not to cumulate Brazilian subject imports in reliance on the allegedly unlawful

Scope Ruling.  (Compl. ¶ 16.)  Plaintiffs' third claim challenges the ITC's volume, price

effects, impact, and material injury determinations, arguing that, "[h]ad Brazilian subject

imports been cumulated with subject imports from China and the U.A.E., the

Commission would have reached an affirmative likely material injury determination."

(Compl. ¶ 22.)  In other words, the ITC's reliance on the Scope Ruling, which

underpinned its decision not to cumulate Brazilian subject imports, ultimately led to a

negative injury determination.  Thus, the validity of the Scope Ruling is central to both

claims.  In such circumstances, the court finds that staying this action pending the

conclusion of *Mitsubishi* would best conserve the resources of the court and parties, as

well as preclude the issuance of conflicting judgments.  *See SKF USA, Inc. v. United

States*, Slip Op. 12-74, 2012 WL 1999685, at *1 (CIT June 4, 2012) (granting motion to

stay because cases raise the same general issue and "the pending litigation . . . is likely

to affect the disposition" of one of the plaintiff's claims); *RHI Refractories Liaoning Co.*,

35 CIT __, 774 F. Supp. 2d at 1285; *see also Am. Life Ins. Co. v. Stewart*, 300 U.S.

203, 215 (1937) ("In the exercise of sound discretion[, a court] may hold one lawsuit in

abeyance to abide the outcome of another, especially where the parties and the issues

are the same." (brackets in original)); *An Giang Agric. & Food Imp. Exp. Co.*, 28 CIT at

__, 350 F. Supp. 2d at 1166 (noting that, if "the effect of a stay [is] to narrow and

sharpen the issues" in the stayed action, "that point counsels entry . . . of the stay").

Terphane's contention that the court should not grant a stay because Plaintiffs

allegedly did not raise the Scope Ruling issue at the administrative level, is premature.

Although the court "'shall, where appropriate, require the exhaustion of administrative

remedies,'" the court "has discretion with respect to whether to require exhaustion."

*SKF USA, Inc.*, 2012 WL 1999685, at *2 (quoting 28 U.S.C. § 2637(d)).  The doctrine of

exhaustion "serves 'the twin purposes . . . of protecting administrative agency authority

and promoting judicial efficiency.'"  *Gerber Food (Yunnan) Co. v. United States*, 33 CIT

186, __, 601 F. Supp. 2d 1370, 1377 (2009) (ellipses in original) (citation and quotation

marks omitted) (quoting *Richey v. United States*, 322 F.3d 1317, 1326 (Fed. Cir. 2003)).

The court finds that ruling on the exhaustion issue at this time would not be a prudent

use of the resources of the parties or this court, because the outcome of *Mitsubishi* may

render Plaintiffs' Scope Ruling arguments moot.  *See NSK Corp. v. United States*, Slip

Op. 12-76, 2012 WL 1999641, at *2 (CIT June 4, 2012); *SKF USA, Inc.*, 2012 WL

199685, at *2; *see also Union Steel Mfg. Co. v. United States*, 37 CIT __, __ n.7, 896 F.

Supp. 2d 1330, 1336 n.7 (2013) (collecting cases in which "stays have been entered

notwithstanding arguments that the plaintiff(s) failed to exhaust their administrative

remedies").  The court therefore will grant Plaintiffs' motion notwithstanding the

outstanding exhaustion issue.

Finally, Terphane has failed to show that it will suffer any harm other than the

extended period of litigation if the court were to grant a stay.  Commerce has revoked

the antidumping duty order on PET film imported from Brazil, and the court has not

enjoined Customs from liquidating Terphane's entries.  *See Polyethylene Terephthalate*

*Film, Sheet, and Strip from Brazil, the People's Republic of China, and the United Arab Emirates*, 88 Fed. Reg. 6689.  Consequently, Terphane's imports of PET film currently enter the United States free of any antidumping duty or security requirement.  While Terphane argues that "some harm is inherent in any denial of the right to proceed," *Neenah Foundry Co.*, 24 CIT at 205, such effects, however, "are attendant to litigation generally.  At most, a stay would (to some extent) prolong them."  *An Giang Agric. Food Imp. Exp. Co.*, 28 CIT at __, 350 F. Supp. 2d at 1166.  Terphane has not articulated any cognizable harm that would come to it as a result of a stay in this action.

Taking these factors into account, the court finds that staying this case pending the final outcome of the *Mitsubishi* litigation would conserve the resources of the parties and the court, and eliminate the potential for conflicting judgments.

### CONCLUSION

For the reasons stated above, the court grants Plaintiffs' Motion to Stay.  The court therefore orders this case stayed pending the outcome of the *Mitsubishi* litigation. The parties shall file a joint status report within 14 days of the final resolution of *Mitsubishi*.

/s/     Mark A. Barnett
Mark A. Barnett, Judge

Dated: August 26, 2015
         New York, New York